**In the Matter of: GRABILL CORPORATION, et al., Debtors–Appellees.**

**Appeal of: Daniel M. PELLICCIONI, et al.**

**No. 92–1209.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 17, 1992.

Decided Jan. 5, 1993.

Francis X. Grossi, Jr., Michael L. Molinaro (argued), Cory S. Halpren, Dawn M. Canty, Katten, Muchin & Zavis, Chicago, IL, for appellants.

Matthew J. Botica, Michael B. Solow (argued), Debbie J. Gezon, Hopkins & Sutter, Richard C. Friedman, Dept. of Justice, U.S. Trustee, Gerald F. Munitz, Winston & Strawn, Nathan P. Eimer, Sidley & Austin, James M. Breen, Chapman & Cutler, Chicago, IL, Jonathan L. Greenblatt, Shearman & Sterling, New York City, Thomas E. Raleigh, Raleigh & Helms, Robert Radasevich, Neal, Gerber & Eisenberg, Chicago, IL, William J. Stoecker, Orland Park, IL, for appellees.

Before POSNER, COFFEY, and MANION, Circuit Judges.

POSNER, Circuit Judge.

Attorneys with the law firm of Katten Muchin & Zavis whom we shall refer to collectively as Katten Muchin sought an award of attorney's fees and related expenses incurred on behalf of the debtor corporations (Grabill for short). They sought it in vain, and appeal.

■ Careful attention to chronology is the key to understanding this case. Grabill retained Katten Muchin on January 11, 1989, to help it restructure Grabill's unsecured loans. Grabill was not yet in bankruptcy. On the same day, Katten Muchin was also retained by William Stoecker, the 100 percent owner of Grabill. Katten Muchin ceased representing Stoecker on January 29 but continued with its representation of Grabill, which two days later was petitioned into bankruptcy by its creditors. Grabill moved immediately to convert the involuntary Chapter 7 bankruptcy initiated by the creditors' petition into a voluntary bankruptcy under Chapter 11 (reorganization). The bankruptcy court granted this motion on February 3. Five days later

Katten Muchin filed on behalf of Grabill a motion under 11 U.S.C. § 327(a) asking that it be employed to represent Grabill in the reorganization proceeding retroactively to February 3. To be eligible for appointment under section 327(a) the lawyer must be "disinterested," which means, so far as bears on this case, that he must not have an interest materially adverse to the creditors by reason of any connection with the debtor. Since Katten Muchin had worked for Grabill's owner at a time when Grabill's bankruptcy was known to be imminent, the bankruptcy judge denied the application to employ Katten Muchin as Grabill's counsel. The judge did this on February 8—the same day the application had been filed. Katten Muchin did not appeal the judge's order.

As soon as the bankruptcy judge denied its application to be employed under section 327(a), Katten Muchin ceased to represent Grabill. But it continued to spend time and incur expense in the bankruptcy proceeding until September 28, 1989, primarily to help Grabill's new counsel get up to speed. Later it applied to the bankruptcy judge under 11 U.S.C. § 330 for compensation for the fees that it had earned, and the expenses it had incurred, during the entire period from February 3 to September 28. Its services to Grabill prior to February 3 had been paid out of an earlier retainer, and these payments, approved in *In re Grabill Corp.*, 113 B.R. 966, 974–75 (Bankr.N.D.Ill.1990), aff'd under the name of *Grabill Corp. v. Pelliccioni*, 135 B.R. 835 (N.D.Ill.1991), were proper, 11 U.S.C. §§ 303(f), 329(a), and are not at issue here. The total fees and expenses for which Katten Muchin sought reimbursement for services rendered between February 3 and September 28 came to almost $80,000, of which about two thirds had been incurred between February 3 and February 8. The bankruptcy judge, affirmed by the district judge, denied the application on the ground that once the bankruptcy became a voluntary one, compensation was available only to attorneys employed under section 327(a) to represent the debtor. *In re Grabill Corp.*, *supra.* When the bankruptcy was involuntary, compensation had been governed by the more liberal provisions of section 303, which is why Katten Muchin was able to obtain compensation for its work prior to February 3.

We must address a jurisdictional issue. After Katten Muchin lost in the district court on December 9, 1991, it filed a motion to reconsider the court's decision. While that motion was pending, Katten Muchin filed a notice of appeal. The pendency of the motion to reconsider, a motion properly classified under Bankr.R. 8015, the bankruptcy counterpart to Fed.R.Civ.P. 59(e), knocked out the notice of appeal. *In re X–Cel, Inc.*, 823 F.2d 192 (7th Cir.1987); *In re Wilkinson*, 923 F.2d 154, 156 (10th Cir.1991). The district court denied the motion to reconsider on January 16, 1992, and Katten Muchin promptly filed a new notice of appeal. The only problem is that the new notice of appeal describes the judgment being appealed from as the judgment of January 16, and we must decide whether this bars Katten Muchin from attacking the original judgment, that of December 9, as well. The motion to reconsider was confined to the fees and expenses sought for the period between February 3 and 8. Grabill argues that Katten Muchin by the form of its second notice of appeal failed to perfect an appeal from the part of the original judgment ignored in the motion to reconsider, namely the part that denied compensation for the period after February 8.

Rule 3(c) of the Federal Rules of Appellate Procedure requires that the notice of appeal specify the judgment appealed from, and it can be argued that Katten Muchin's second notice of appeal designated merely the judgment denying the motion to reconsider (and the first notice of appeal was a nullity). But it is a poor argument. An appeal from a final judgment brings up for review by the appellate court all orders (except those that have become moot) rendered by the trial court previously in the litigation. *United States v. Clark*, 445 U.S. 23, 25–26 n. 2, 100 S.Ct. 895, 898–99 n. 2, 63 L.Ed.2d 171 (1980); *In re Kilgus*, 811 F.2d 1112, 1115–16 (7th Cir.1987). The final judgment in this case was the order of

January 16 denying the motion to reconsider. The filing of that motion had made the original judgment, that of December 9, nonfinal, with the result that the case was not over until the order of January 16 ended it; so that order was the final judgment. By appealing from it Katten Muchin brought before us all the previous nonmoot orders in the case, including the original judgment to the extent that it hadn't been superseded by the order denying reconsideration. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Petru v. City of Berwyn*, 872 F.2d 1359, 1361–62 (7th Cir.1989); *In re X–Cel, Inc., supra*, 823 F.2d at 193; *Sutliff v. Donovan Cos.*, 727 F.2d 648, 652 (7th Cir.1984); *In re Shah*, 859 F.2d 1463, 1464–65 (10th Cir. 1988) (per curiam).

We come to the merits. At first glance they are very simple. Section 330 authorizes the bankruptcy court to award compensation to "a professional person employed under section 327." Katten Muchin was not employed under section 327, its application for employment under that section having been turned down. Grabill did not attempt to appeal from that turn down. We need not decide whether it could have done so. *In re F/S AirLease II, Inc.*, 844 F.2d 99, 103–05 (3d Cir.1988), holds that such an order is appealable, but, as noted in *In re PHM Credit Corp.*, 99 B.R. 762, 764 (E.D.Mich.1989), its holding is in tension with the cases that hold that orders of attorney disqualification—which in this case is, in effect, what the order denying the application for employment was—are not appealable despite their practical finality. See *In re Sandahl*, 980 F.2d 1118 (7th Cir.1992), and cases cited there. We need not decide the question. We do not understand Katten Muchin to be asking us to reexamine the order denying it employment as Grabill's counsel. Hence by no stretch of the imagination can Katten Muchin be regarded as having been employed under section 327(a). The Supreme Court's current penchant for literal interpretations of the Bankruptcy Code, well illustrated by last Term's decision in *Connecticut National Bank v. Germain*, —— U.S. ——, —— – ——, 112 S.Ct. 1146, 1149–50, 117

L.Ed.2d 391 (1992), thus writes *finis*, one would have supposed, to Katten Muchin's hopes of obtaining compensation under a provision that contains a condition precedent that it concedes it does not satisfy.

▮ It points out however that whatever the judicial trend with respect to the interpretation of other provisions of the Bankruptcy Code, section 330 has been interpreted liberally rather than literally. But most of the cases—including all the appellate ones—that it cites or could cite for this proposition are cases in which lawyers *who would have been approved* as debtors' counsel under section 327(a) neglected to file an application and were compensated anyway, the idea behind this display of lenity being that the denial of all compensation would be an excessive sanction for harmless neglect. *Stolkin v. Nachman*, 472 F.2d 222, 226–27 (7th Cir.1973); *Chicago & West Towns Rys. v. Friedman*, 230 F.2d 364, 369 (7th Cir.1956); *In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir.1986); *In re Cormier*, 35 B.R. 424, 425 (D.Me.1983); *In re Met–L–Wood Corp.*, 103 B.R. 972, 975 (Bankr.N.D.Ill.1989), aff'd, 115 B.R. 133 (N.D.Ill.1990); *In re Banhalmi*, 84 B.R. 123, 127 (Bankr.N.D.Ill.1988); *In re Eastern Inns of New Hampshire, Inc.*, 72 B.R. 418, 421 (Bankr.D.Me.1987). Yet even though proportionality is an important consideration in designing sanctions, and even if no regard is paid to the tug that literal interpretation exerts on contemporary judicial heartstrings, the soundness of these decisions could be questioned. A lawyer who was concerned that he might be disapproved if he applied under 327(a) might take a chance on not applying and instead seeking compensation later in the hope that the bankruptcy judge would be reluctant to deny all compensation for work well done. (Something like this concern may underlie the common law's traditional aversion to "officious intermeddlers." If A, knowing that B loves violin music, plays the violin outside B's window, a court will not force B to compensate A for the service thus rendered unless they had a contract.) This would be a risky tactic, however, and maybe each of the failures to apply for

appointment as counsel in the cases that we have cited was indeed completely innocent, as the courts believed. In any event those cases do not help Katten Muchin. Retroactive approval followed by compensation is one thing; retroactive compensation to a disapproved and—if the bankruptcy judge's denial of Katten Muchin's application to represent Grabill was correct, a determination that Katten Muchin has not challenged—ineligible lawyer is another. The scattered cases, none at the court of appeals level, that allow a lawyer to be compensated who, lacking the requisite disinterest, could not have been appointed seem to us just plain wrong. *In re Rusty Jones, Inc.*, 134 B.R. 321, 341–47 (Bankr. N.D.Ill.1991); *In re Apex Oil Co.*, 128 B.R. 671, 674 (Bankr.E.D.Mo.1991); *In re Central Ice Cream Co.*, 59 B.R. 476, 491 (Bankr.N.D.Ill.1985), app. dismissed, 62 B.R. 357 (N.D.Ill.1985).

Katten Muchin raises the spectre of the bankrupt that cannot obtain adequate representation because the time until critical legal services must be rendered if a reorganization is to succeed is too short for any lawyer to be approved under section 327(a) and no lawyer is willing to risk working for nothing. We can deal with that case (a subtype of the retroactive-approval cases just discussed) when it arises. It is a case in which (1) an eligible lawyer (2) acts promptly. That is not our case. By January 11 or shortly afterward Katten Muchin knew that Grabill's bankruptcy was imminent, that it was representing both Grabill and Grabill's sole shareholder, and that in light of this dual representation it could not be confident that it would be approved as Grabill's lawyer when its client entered bankruptcy. Yet it waited almost a month before filing its section 327(a) application. The delay is unexplained. We emphasize that it was Katten Muchin's delay rather than the bankruptcy judge's—he ruled on the same day the application was filed.

It is a much more orderly system in which the lawyer applies for approval before he starts running up a large bill. Orderliness may not be the highest value and there may be cases in which time is so short that the lawyer must start work be-fore he can file the application—and perhaps some bankruptcy judges, unlike the one in this case, sit on such applications for a long time, which could create great awkwardness. Perhaps in a case in which the lawyer filed his application as early as was practicable, could not defer performing critical legal work for the debtor, and had no reason to believe that his application would be turned down—but it was, much later—section 330 could be bent to allow compensation. Conceivably section 503 of the Bankruptcy Code, the general administrative-claims section, could be used as a safety valve to relieve the rigidity of section 330 in cases in which it would be highly inequitable to deny a lawyer all compensation for services that had conferred a benefit on the debtor's estate and hence on the unsecured creditors seeking to deny him that compensation. Section 503(b)(1)(A), the only possibly relevant subsection, authorizes payment of the actual, necessary costs of preserving the estate. This subsection might, in the context of a Chapter 11 proceeding such as this, authorize the payment of a claim that arose from a transaction with the debtor in possession (that is, a transaction *after* bankruptcy has been declared) and was beneficial to the debtor in possession. *In re Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir.1984); see also *In re Hemingway Transport, Inc.*, 954 F.2d 1, 5–7 (1st Cir.1992). (We don't suppose it matters whether the transaction is with someone who had rendered similar services to the debtor before bankruptcy.) We need not decide whether this provision can be invoked by a lawyer who renders postpetition services to the debtor that are not authorized by section 330, or whether the regime created by 330 is exclusive so far as lawyers' services to the debtor is concerned. Katten Muchin does not cite section 503.

What we have said with regard to fees and expenses incurred before February 8 applies with even greater force to fees and expenses incurred afterward. For afterward Katten Muchin knew not only that it was not, but that it could not be, employed by Grabill. It points out that it

rendered valuable services to the debtor in assisting new counsel in coming up to speed. But it had, as it acknowledges and even emphasizes, an ethical obligation to do so. It has no claim based on principles of equity or natural justice, let alone—what is more to the point—any claim based on section 330, for seeking compensation for expenses that it incurred by virtue of being *denied* permission to represent the debtor. It should have advised Grabill no later than January 31, when bankruptcy was declared, that in all likelihood Grabill would require substitute counsel. Had it done so and incurred unavoidable expenses in the transition period, it might conceivably have a claim under section 503. It does not seek relief under 503, however, and it has, as we have explained, no ground for relief under section 330. The case might be different if the counsel that the debtor in possession was permitted to and did employ had hired Katten Muchin to assist it to get up to speed, and later included Katten Muchin's fees and expenses for that assistance in its own application for fees and expenses. If it could show that hiring Katten Muchin had reduced the fees and expenses that it would otherwise have had to incur, we may assume without deciding that the application would be approved and Katten Muchin would thus receive compensation indirectly. It was under an ethical obligation to assist in the transition, but not necessarily under an ethical obligation to do so for free, save to the extent that its own delay in arranging for substitute counsel increased the cost of the transition.

AFFIRMED.