### In re MILWAUKEE ENGRAVING CO., INC., Debtor.

### Bankruptcy No. 98–21027.

United States Bankruptcy Court,
E.D. Wisconsin.

June 30, 1998.

---

---

Jerome R. Kerkman, Maier & McIlnay Ltd., Milwaukee, WI, for Debtor.

David W. Asbach, Milwaukee, WI, for defendant.

MEMORANDUM DECISION ON THE MOTION OF MAIER McILNAY & KERKMAN, LTD. FOR PAYMENT OF FEES, EXPENSES AND COSTS

MARGARET DEE McGARITY,
Bankruptcy Judge.

The law firm of Maier McIlnay & Kerkman, Ltd., whose employment application was denied on the ground that it was not "disinterested" as required by 11 U.S.C. § 327(a), sought approval of its fees and costs incurred in connection with this case. For the reasons stated below, its request is granted.

### FACTS [1]

This case was commenced by the filing of a voluntary small business bankruptcy under chapter 11 on February 3, 1998. In addition to the petition and schedules, the debtor filed a proposed plan of reorganization, disclosure statement and request for conditional approval of the disclosure statement. On that same date, the debtor also filed an application to approve the retention of Maier McIlnay & Kerkman, Ltd., (MM & K) as its general bankruptcy counsel.[2] An affidavit of

---

1. Although the parties have not stipulated to the facts, none appear to be in dispute.

2. The pleadings were filed on February 3 with the petition. For unknown reasons, they were held by the Bankruptcy Clerk's office and file-stamped on February 4, 1998.

Attorney Jerome R. Kerkman contained the disclosures required by 11 U.S.C. § 329 and § 504, and Bankruptcy Rules 2014(a) and 2016(b).

The affidavit filed on February 3, disclosed that MM & K also represented Black Hawk Label Co., Inc. Black Hawk was a sister corporation of the debtor and both were owned and controlled by Dennis Dettmann, president of the debtor and Black Hawk. Black Hawk owed the debtor approximately $78,000. The affidavit disclosed that MM & K's representation was limited to the sale of Black Hawk's assets to a third party with the hope of obtaining some repayment on the debt owed the debtor.

The application to employ MM & K was opposed by the Office of the United States Trustee. The U.S. Trustee argued that the firm held an interest adverse to the estate and was not "disinterested" within the definition of that term in 11 U.S.C. § 101(14) and thus was not qualified to be employed by the debtor under 11 U.S.C. § 327(a).

At a hearing on March 6, 1998, this court sustained the U.S. Trustee's objection and denied the application to employ MM & K. The court determined that MM & K represented an interest adverse to the estate because the firm was to be paid from the proceeds of the sale of Black Hawk's assets. Under an agreement between the debtor and Black Hawk, the debtor would receive the proceeds of the sale after payment to Black Hawk's other creditors and attorney fees. As counsel for the debtor, MM & K would be obligated to scrutinize its own fees to maximize the debtor's claim. Thus, MM & K could not represent both Black Hawk and the debtor.

This court also denied MM & K's motion to reconsider the denial of its application on March 16, 1998. No appeal has been taken from the court's decision denying approval of MM & K's employment.

Thereafter, the firm filed an application seeking compensation for services provided to and costs incurred for the debtor before

the appointment of MM & K was denied. The application sought fees of $14,121.00 and costs of $442.13 for services provided and expenses incurred through March 25, 1998.

Maier McIlnay & Kerkman, Ltd.'s fee application was opposed by the U.S. Trustee on the ground that there is no legal basis for awarding attorneys' fees and costs to a law firm that has failed to qualify for employment by the debtor.

## DISCUSSION

A chapter 11 debtor's counsel is normally awarded compensation under 11 U.S.C. § 330(a). Section 330(a)(1) provides, in relevant part, that

... the court may award to ... a professional person employed under section 327 ...

(A) reasonable compensation for actual, necessary services rendered by the ... professional person ...; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1). Section 327(a), in turn, provides that

... the trustee,[3] with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

Maier McIlnay & Kerkman does not contend that it may receive compensation under § 330(a), its employment not having been approved by the court under § 327(a). Instead, it asserts that its fees and costs should be allowed as actual, necessary costs of preserving the estate under 11 U.S.C. § 503(b)(1). Section 503(b)(1) of the Bankruptcy Code provides that the court shall allow "... the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case...." The firm contends that the ser-

3. Section 1107(a) makes the term "trustee" synonymous with the term "debtor-in-possession" for purposes of this application.

vices it provided to the debtor during the first two months of the case were actual and necessary and helped preserve the estate for the benefit of creditors.

Thus, the issue before the court is whether a law firm whose fees are not allowable under 11 U.S.C. § 330 because it does not qualify for employment under 11 U.S.C. § 327(a) may have those fees allowed instead under 11 U.S.C. § 503(b)(1).

The U.S. Trustee contends that professionals employed by the debtor-in-possession may only be allowed compensation as an administrative expense pursuant to § 503(b) if the requirements of § 327(a) and § 330(a) are met. The U.S. Trustee cites several Seventh Circuit cases for support, including *Matter of Grabill Corp.*, 983 F.2d 773, 777 (7th Cir.1993). *Matter of Singson*, 41 F.3d 316, 320 (7th Cir.1994), and *In re Crivello*, 134 F.3d 831, 840 n. 4 (7th Cir.1998). MM & K believes those cases are distinguishable on their facts.

Nothing in the plain language of § 503(b)(1) would appear to preclude an award of attorneys' fees and costs actually and necessarily incurred by an attorney who was not and could not be employed by a debtor-in-possession or trustee. Thus, the court must look to case law for the answer.

The most recent Seventh Circuit decision regarding attorney compensation is *In re Crivello*, 134 F.3d 831 (7th Cir.1998). In *Crivello*, the law firm which represented the debtor-in-possession did not disclose prior connections it had with the debtor and related parties, as well as its prepetition claims against the debtor. The bankruptcy court and district court had denied all requested fees. The Seventh Circuit was faced with the issue of whether a bankruptcy court must deny fees when it subsequently learns that a professional never should have been employed under § 327(a) in the first place, or whether it has discretion to award or to deny fees. *Id.* at 836. The appellate court determined that a bankruptcy court has discretion under § 328(c) to award fees, in whole or in part, of an erroneously employed professional.

Unlike *Crivello*, the issue in this case involves the availability of compensation under § 503(b)(1), not § 327(a) and § 328(c). Also unlike the law firm in *Crivello*, MM & K's application for employment was never approved by the court due to its proper disclosure of its connections with parties related to the debtor. It would be odd, indeed, if a bankruptcy court were given discretion under the Bankruptcy Code to award compensation to a professional who was erroneously employed due to the professional's failure to disclose, yet precluded from awarding compensation to a professional who was never employed due to proper disclosure of the conflict. Such a rule would encourage nondisclosure of adverse interests, which most would agree would be highly undesirable policy.

In *Matter of Singson*, 41 F.3d 316 (7th Cir.1994), the law firm representing the chapter 7 trustee as special counsel sought compensation for services to the trustee that exceeded the scope of the court-approved limited purpose appointment. The Seventh Circuit affirmed the bankruptcy court's decision that, although the law firm's time had been beneficial to the estate, compensation for any services beyond those authorized in advance were denied. The firm's request for retroactive approval of its employment for the unauthorized services was likewise denied.

The U.S. Trustee in this case contends that the following language in the *Singson* decision further precludes the approval of compensation for MM & K:

Our conclusion that the bankruptcy judge acted within his discretion in denying the application for retroactive approval disposes of any claim under 11 U.S.C. § 503. That section provides for priority payment of administrative expenses, but legal (and other professional) fees during the administration of the estate become administrative expenses only to the extent they are approved under § 327 or some other section, such a 11 U.S.C. § 330 or § 1103(a).

Nothing in § 503 permits a law firm to recover fees for work that the bankruptcy judge has concluded is noncompensable.

*Singson,* 41 F.3d at 320 (citation omitted).

In essence, the court made quite clear that attorneys employed to perform one task cannot take it upon themselves to perform another. The *Singson* attorneys had a court order in place telling them what they could do, and they did something different. Taken alone, the quoted statement might support denial of MM & K's position, but it must be read in context with its facts and in conjunction with both *Crivello, supra.* and *Matter of Grabill Corp.,* 983 F.2d 773 (7th Cir.1993).

In *Grabill,* the claimant applied for approval of its employment and was not approved for lack of disinterestedness. The debtor corporation retained the law firm prior to filing bankruptcy to help it restructure its unsecured loans. On the same day, the firm was also retained by the debtor's 100 percent owner. The firm ceased representing the owner after approximately two weeks, but the debtor's creditors filed an involuntary chapter 7 petition against the debtor two days later. The case was converted to a voluntary chapter 11, and the firm moved for approval of its employment of the debtor retroactively to the date of conversion. The bankruptcy judge denied the application because the firm was not "disinterested" due to its representation of the debtor's owner at a time when bankruptcy was known to be imminent.

After the bankruptcy judge denied its application for employment, the firm ceased to represent the debtor, but it continued to spend time and incur expenses in the bankruptcy proceeding. The bankruptcy judge denied the firm's application for reimbursement of services rendered during the eight months after its denial of employment. The court determined that compensation was only available to attorneys employed under § 327(a) to represent the debtor. The Seventh Circuit affirmed. The court noted that "[t]he scattered cases, none at the court of appeals level, that allow a lawyer to be compensated who, lacking the requisite disinterest, could not have been appointed seem to us just plain wrong." *Grabill,* 983 F.2d at 777.

Notwithstanding this dicta, the court acknowledged the possibility of an award pursuant to § 503. Section 503 "could be used as a safety valve to relieve the rigidity of section 330 in cases in which it would be highly inequitable to deny a lawyer all compensation for services that had conferred a benefit on the debtor's estate and hence on the unsecured creditors." *Id.* According to the *Grabill* court, to qualify for such an award, the claimant would have to seek approval of its employment as promptly as possible, perform critical services that could not be deferred, and have no reason to believe that it would not qualify for employment. *Id.* The court found the claimant in the case deficient in two respects: (1) not having applied for approval of its employment for nearly a month, and; (2) having known of the disqualifying factor from the beginning. *Id.* Also, substantial services were performed after denial of the application.

As far as this court can tell, the "safety valve" has not been closed shut by the subsequent Seventh Circuit rulings in *Singson* or *Crivello.* The courts were concerned that employed professionals take sufficient precautions to ensure that their services are within the scope of prior authorizations. *See Singson,* 41 F.3d at 320. This is the same concern articulated in *Grabill*—that the claimant should seek approval of its employment as promptly as possible. Additionally, as noted by the *Crivello* decision, which was written after *Singson.* "*Grabill* remains authoritative for the issue of whether a professional may recover fees without prior approval from the bankruptcy court." *Crivello,* 134 F.3d at 840 n. 4.

Following *Grabill,* this court thinks it possible that an award based in equity could be made in an appropriate case, and this an appropriate case. MM & K certainly filed its application for employment promptly—on the same date the petition was filed. Any delay in the denial of MM & K's application for employment was not due to the firm's neglect or oversight, but rather the demands of the court's calendar.

The services performed by MM & K included advising the debtor on legal issues involving the lawful operation of its business after it had filed a chapter 11 petition; negotiating and drafting a disclosure statement and plan; appearing at hearings related to the confirmation of the plan; reviewing claims and demanding return of preferences; and seeking approval of the debtor's cash collateral agreement, addressing adequate protection issues and maintaining the debtor's utilities. MM & K is not seeking compensation relating to its retention or for services provided during the transition of the case to replacement counsel. The court has reviewed the time records of MM & K and finds that the work performed was critical to the successful reorganization of the debtor. This case was filed as a small business chapter 11 and consequently was put on a fast-track for confirmation. The services rendered by MM & K quite likely could not have been deferred without compromising the case. Once the firm knew it was not to be employed, it expeditiously sought alternative counsel for the debtor.

Finally, it was rational for MM & K to have no reason to believe that it would not qualify for employment. The disqualifying conflict was atypical. The firm did not represent competing interests, but rather shared a competing interest with the debtor itself. They had represented Black Hawk for a limited purpose, and that purpose in no way tainted the services performed for the debtor and for which compensation is requested. No conflict of interest arose until it came time to divide the proceeds of the Black Hawk sale, and at that point new counsel stepped in. The services provided by MM & K were reasonable, necessary and beneficial to the estate. 11 U.S.C. § 503(b).

## CONCLUSION

For the reasons discussed, the motion of Maier McIlnay & Kerkman, Ltd. for payment of fees, expenses and costs is granted.