### In re MILWAUKEE BOILER MANUFACTURING CO., Debtor.

**Bankruptcy No. 98–21415–JES.**

United States Bankruptcy Court, E.D. Wisconsin.

March 19, 1999.

Paul A. Lucey, Godfrey & Kahn, S.C., Milwaukee, WI.

David W. Asbach, Milwaukee, WI, Office of U.S. Trustee.

Paul G. Swanson, Oshkosh, WI, for Debtor.

Michael F. Dubis, Waterford, WI, Trustee.

## DECISION

JAMES E. SHAPIRO, Chief Judge.

Godfrey & Kahn, S.C. ("G & K") has moved for allowance of its claim in the amount of $19,191.42 for legal services rendered on behalf of the debtor as an administrative claim under 11 U.S.C. § 503(b)(1)(A).[2] The U.S. Trustee, joined by A.B.A. Enterprises, Inc. ("ABA"), a secured creditor, oppose G & K's motion. A joint trial statement has been filed containing agreed upon facts which enables this court to decide this motion without an evidentiary hearing.

■ The issue presented is whether a law firm disqualified from appointment as a professional under 11 U.S.C. § 227(a) may recover compensation under 11 U.S.C. § 503(b)(1) for services it rendered while its application for appointment was pending and before it was disallowed.

The U.S. Trustee contends that § 330[3] is the exclusive provision for awarding compensation to professionals. Sec. 330 in turn requires prior court approval of professionals pursuant to § 327.[4] The U.S. Trustee therefore deduces that, unless such professional has been qualified under § 327, it cannot receive any compensation from the estate.

G & K takes issue with this contention. It relies upon the decision of the Honorable Margaret Dee McGarity in *In re Milwaukee Engraving Co., Inc.*, 230 B.R. 370 (Bankr.E.D.Wis.1998).[5] This case holds that, under appropriate facts, there can be a recovery by a professional from the estate pursuant to § 503(b)(1), notwithstanding no court appointment of such professional. Judge McGarity cites *In re Grabill*, 983 F.2d 773, 777 (7th Cir. 1993), which declares in part the following:

> Conceivably, § 503 of the Bankruptcy Code, the general administrative claims section, could be used as a safety valve to relieve the rigidity of § 330 in cases in which it would be highly inequitable to deny a lawyer all compensation for services that had rendered a benefit on the debtor's estate....

Milwaukee Boiler Manufacturing Co. ("debtor") filed a petition for relief under chapter 11 on February 13, 1998. Its bankruptcy petition was filed with the assistance of G & K who had been initially contacted by the debtor only a few days earlier—on February 11, 1998. G & K promptly filed its application for appointment as attorney for the debtor on Febru-

**2. § 503. Allowance of administrative expenses.**
—
(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed tinder section 502(f) of this title, including—
(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

**3. § 330. Compensation of officers.**
(a)(1) After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to ... a professional person employed under section 327 ...
(A) reasonable compensation for actual. necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
(B) reimbursement for actual, necessary expenses.

**4. § 327. Employment of professional persons.**
(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

**5.** This decision is on appeal.

ary 17, 1998. The February 13, 1998 chapter 11 filing occurred because of an emergency. February 13, 1998 fell out on a Friday, and a sheriffs sale arising out of a state court mortgage foreclosure action had been scheduled to be conducted on the following Monday, February 16, 1998. Debtor's previous counsel, Floyd A. Harris, had recently withdrawn from representing the debtor because of a claim of conflict of interest asserted by ABA, the holder of the mortgage foreclosure judgment. The debtor had to move quickly. Making matters even tighter for the debtor was the fact that the debtor, as a corporation, under settled case law and pursuant to Local Rule 2.02, was required to appear in bankruptcy court by an attorney, and the debtor was having a very difficult time obtaining any professional without any conflicts of interest.

Meanwhile, after the chapter 11 petition was filed and while G & K's application for appointment was pending, several pressing legal matters required immediate attention. These included: preparation of the debtor's bankruptcy schedules; negotiations with various secured creditors, including ABA, MB Lender Group (another creditor), and the Internal Revenue Service; consideration as to the feasibility of proceeding with a § 363 sale; meetings with Richard W. Stevens, the debtor's president, regarding the debtor's continued operation while in chapter 11; analysis of potential preference and fraudulent conveyance avoidance actions; and negotiations and hearings in connection with cash collateral. G & K performed these services.

G & K promptly undertook a conflict of interest search. It filed its initial affidavit, as well as two supplemental affidavits, which disclosed that it had represented Repair Alloy, Inc., the holder of a large unsecured claim (approximately $164,500) against the debtor. Because of this, the court concluded G & K was not a disinterested party. At a court hearing held on March 3, 1998, G & K was disqualified, and

its motion for reconsideration of this ruling was also subsequently denied.

The decision on disqualification was a close call. G & K had no way of knowing how this court would decide this issue. The debtor did not contest Repair Alloy's claim. Both Repair Alloy and the debtor were fully aware of G & K's involvement. Repair Alloy voiced no opposition to G & K's application for appointment. The likelihood of any potential conflict between these parties erupting into a full-blown dispute was remote. However, this court—to G & K's disappointment—held that the potential conflict was sufficient to disqualify G & K.

The facts here are similar to those in *Milwaukee Engraving, supra.* Judge McGarity in *Milwaukee Engraving* decided that, under appropriate circumstances, there can be a recovery from a professional from the estate under § 503(b)(1) even though the professional is ultimately disqualified. Judge McGarity's analysis is well-reasoned, practical, flexible, and equitable.

 Nothing in § 330 states that this section is the sole authority for recovery by professionals of compensation from a bankruptcy estate. By the same token, nothing in § 503(b)(1) states that professionals are ineligible to seek recovery under this provision. Indeed, § 503(b)(1) contains the word "including." Sec. 102(3) of the Bankruptcy Code declares that the word "including" is not limiting. Thus, the various categories set forth in § 503(b)(1), which describe which parties can seek recovery, are not exhaustive. *Collier on Bankruptcy* § 503.05.

G & K did not seek out the debtor. To the contrary, it was the debtor, in dire need for immediate assistance, who came to G & K for help. G & K in good faith answered its call. The policy expressed by the Seventh Circuit in *In re Singson,* 41 F.3d 316, 319 (7th Cir.1994), of discouraging "volunteers attracted to the kitty" is not being abused in this case by authoriz-

ing payment of fees to G & K from the debtor's estate.

The U.S. Trustee cites *Singson, supra,* and *In re Crivello,* 134 F.3d 831 (7th Cir. 1998), for the proposition that compensation must be denied because G & K was not appointed by the bankruptcy court. *Crivello* does not require this court to reach the position advocated by the U.S. Trustee. Under the facts in *Crivello,* the bankruptcy court found that the debtor's attorneys had "willfully failed to disclose critical facts and connections with Frank Crivello." 134 F.3d at 835. *Crivello* declared that the bankruptcy court, even under these circumstances, has discretion to award fees. The following comments by Judge McGarity in *Milwaukee Engraving* are on target:

> It would be odd, indeed, if a bankruptcy court were given discretion under the Bankruptcy Code to award compensation to a professional who was erroneously employed due to the professional's failure to disclose, yet precluded from awarding compensation to a professional who was never employed due to a proper disclosure of the conflict. Such a rule would encourage nondisclosure of adverse interests, which most would agree would be [a] highly undesirable policy.

*Milwaukee Engraving, supra* at 372. On remand, the bankruptcy court in *Crivello* chose not to exercise its discretion to award fees. However, in the case at bar, the circumstances are markedly different. There was no failure on the part of G & K to disclose critical facts. This court believes that G & K, for its role in this case, deserves a pat on the back—not a kick in the pants.

The facts and circumstances in *Singson, supra,* are also distinguishable. In *Singson,* a law firm was appointed special counsel for the trustee. The law firm exceeded the duties under its authorized appointment and later sought recovery for such services *nunc pro tunc,* claiming that its services benefitted the estate. The Seventh Circuit Court of Appeals sustained both the bankruptcy court and the district court in denying the requested compensation, declaring that there was no showing of excusable neglect. Although in *Singson* the law firm was denied recovery under § 503, that decision cannot be so broadly read as meaning that § 503 can never serve as a basis for recovery for professionals. The Seventh Circuit Court of Appeals in *Crivello, supra,* observed that *Grabill* remains authoritative on the issue of whether a professional may recover fees without prior approval from the bankruptcy court. 134 F.3d at 840 n. 4.

The U.S. Trustee correctly notes that there is ample case law which holds that § 503(b)(1)(A) cannot serve as a basis for awarding fees to professionals. *F/S Airlease II, Inc. v. Simon,* 844 F.2d 99 (3rd Cir.1988); *In re Concrete Products, Inc.,* 208 B.R. 1000 (Bankr.S.D.Ga.1996); *In re Channel 2 Associates,* 88 B.R. 351 (Bankr. D.N.M.1988); *In re Rakosi,* 99 B.R. 47 (Bankr.S.D.Cal.1989); *In re Cutler Manufacturing Corp.,* 95 B.R. 230 (Bankr. M.D.Fla.1989); *In re Marlin Oil Co.,* 83 B.R. 50 (Bankr.D.Colo.1988); and *In re Weibel, Inc.,* 176 B.R. 209 (9th Cir. BAP 1994). This court declines to adopt that view, which it believes is unduly rigid and not mandated by the Bankruptcy Code. Sections 327 and 330 never envisioned the situation which is now before this court— i.e., where legal services were rendered out of necessity, while an application for appointment was pending, and before such application was disapproved. This is not a case of a professional who has neglected to timely file an application for appointment and subsequently seeks court approval through unauthorized means. Even *Cutler, supra,* cited by the U.S. Trustee declares that there may be circumstances where a professional has a choice to seek compensation under either § 327 or § 503. While *Cutler* concluded that the facts in that case did not warrant compensation under § 503, the facts in the instant case do.

What is an attorney to do when it is contacted by a debtor who is frustrated in its efforts to obtain legal counsel and is faced with an immediate deadline? Should the attorney close its door to this debtor? It certainly could have done so, but the real question is: Was it required to do so? Can an attorney at least attempt to provide some stop-gap relief for the debtor and maintain the status quo while the attorney is conducting a detailed conflict of interest search? G & K reasonably believed, when contacted by the debtor, that its application for appointment would be approved. It chose to lend a helping hand to this debtor, pending a court determination on its application for appointment. Should all compensation be denied where there was a benefit to the estate due to the attorney's performance and while the attorney's application was pending or should the court join those courts which inflexibly adhere to the "no appointment, no compensation" principle?

 A bankruptcy court is a court of equity. This court recognizes it can only exercise its equitable powers within the confines of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Keeping in mind the equities in this case, this court believes that what happened here is precisely what the Seventh Circuit Court of Appeals had in mind in *Grabill* when it declared that § 503 under equitable circumstances "could be used as a safety valve to relieve the rigidity of section 330." *Matter of Grabill Corp.,* 983 F.2d 773, 777 (7th Cir.1993). The court in *In re Raytech Corp.* made the following observation:

> Bankruptcy is a specialized area of law. The meaning of code sections is sometimes subtle, the timing of critical events is often urgent and the negotiation process at the core of the chapter 11 reorganization process is usually delicate. Bankruptcy law must be able to attract the best legal talent. Nowhere is that

more apparent than in a complex chapter 11 case....

*Raytech,* 206 B.R. 646, 651. G & K is clearly a member of that class of attorneys who specialize in bankruptcy law and provide first-rate legal service to its clients. To disallow all of its fees, as is suggested by the U.S. Trustee, would send the wrong message to the entire bankruptcy bar.

> Often the most active and intense work on both the debtor and creditor sides occur immediately after the filing of the bankruptcy petition, or in some instances, in the days immediately preceding the filing of the petition. The preparation or absorption of bankruptcy schedules, initial fact gathering, postpetition financing, analysis of where the case is likely to be going—these are among the things that a good lawyer does at or about the time the Chapter 11 petition is filed. Sometimes, the attorney considers it more important to perform those primary tasks than to prepare his application for engagement under § 327. In many cases, cash collateral motions and similar crucial matters will be heard by the court before the court has received or acted upon an application to engage a particular attorney. Assuming that an application and decision follows in a reasonable time, what possible explanation is there for the decisions denying counsel fees for services performed in that interim period?

Nathan B. Feinstein, *The "Small" Chapter 11 Case: Proposals for Changes,* 63rd Ann. Meeting of Nat'l Conference of Bankr. Judges 6–5, 6–16 (1989).

This court opts not to follow the per se approach urged by the U.S. Trustee. Instead, it joins with Judge McGarity and endorses her reasoning as expressed in *Milwaukee Engraving, supra.* G & K had timely filed its application for appointment. Before the court had an opportunity to rule upon its application, it was required to perform urgent legal services, which were in the best interest of and benefitted the estate. This is not a case of attorneys

seeking to do an "end run" around a specific exclusive Code provision. It is also not a case of performing services as officious intermeddlers. Based upon the overriding equities of this case, G & K is entitled to compensation under § 503(b)(1)(A) as an administrative claim. Nothing in this decision constitutes a determination as to the reasonableness of G & K's requested attorney's fees for $19,141.42. That will be a matter for another day.