In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3738


In the Matter of:

   Milwaukee Engraving Company, Incorporated,

Debtor.


Appeal of:

   Ira Bodenstein, United States Trustee


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 98-C-806--John W. Reynolds, Judge.


Argued May 16, 2000--Decided July 13, 2000



   Before Easterbrook, Ripple, and Rovner, Circuit
Judges.

   Easterbrook, Circuit Judge.  When Milwaukee
Engraving Co. entered bankruptcy, it was
represented by Maier McIlnay & Kerkman, Ltd.
(MMK). Section 327(a) of the Bankruptcy Code, 11
U.S.C. sec.327(a), permits a trustee or debtor in
possession to "employ one or more attorneys . .
. that do not hold or represent an interest
adverse to the estate, and that are disinterested
persons". Milwaukee Engraving filed an
application seeking to use MMK's services in the
bankruptcy proceeding. An accompanying affidavit
asserted that MMK was disinterested but revealed
that MMK represented Black Hawk Label, Inc., which
owed Milwaukee Engraving some $78,000. This would
not have been an interest "adverse to the estate"
if Black Hawk had been flourishing, but it was
not. Black Hawk (under joint ownership with
Milwaukee Engraving) was arranging to liquidate.
MMK represented Black Hawk in that endeavor and
had first dibs on the proceeds of any sale,
before the balance was distributed to Milwaukee
Engraving and Black Hawk's other creditors. The
United States Trustee objected to MMK's
employment, and the bankruptcy court concluded
that the law firm's interest in the proceeds from
the sale of Black Hawk's assets meant that MMK
represented an interest adverse to Milwaukee
Engraving. See 11 U.S.C. sec.101(14)(E).

Milwaukee Engraving acquiesced and engaged another law firm.

Section 330(a)(1)(A) of the Code conditions payment of "reasonable compensation for actual, necessary services rendered by . . . [an] attorney and by any paraprofessional person employed by any such person" on approval under sec.327, which MMK lacked. Nonetheless, MMK asked the bankruptcy judge to approve payment of some $15,000 for the professional services it had rendered to Milwaukee Engraving between the commencement of the case and the approval of its replacement, about 20 days after the judge concluded that MMK was not disinterested. Bankruptcy Judge McGarity granted this application, 230 B.R. 370 (Bankr. E.D. Wis. 1998), relying on 11 U.S.C. sec.503(b)(1)(A), which permits the court to award as administrative expenses "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case". The bankruptcy judge noted that MMK provided legal services for a month between filing and the decision under sec.327, observed that these services were beneficial to the estate despite MMK's interest in Black Hawk, and concluded that it would be inequitable to deny MMK compensation. She recognized, however, that payment for legal services usually depends on sec.sec. 327 and 330, and that sec.503(b)(2) grants administrative priority to "compensation and reimbursement awarded under section 330(a) of this title". By making express provision for employment under sec.327, payment under sec.330, and priority under sec.503(b)(2), the Code logically forecloses the possibility of treating sec.503(b)(1)(A) as authority to pay (and give priority to) claims that do not meet its substantive requirements. Statutes directly addressing a subject prevail over silences and implications of other provisions. We so held, for sec.sec. 327, 330, and 503 in particular, in In re Singson, 41 F.3d 316, 320 (7th Cir. 1994), and the bankruptcy judge acknowledged that the language of Singson bars an award to MMK.

Nonetheless, she stated, Singson must be read together with In re Grabill Corp., 983 F.2d 773, 777 (7th Cir. 1993), which raised the possibility that sec.503(b)(1)(A) might provide independent authority to compensate attorneys. Grabill added that the sort of claim MMK makes--a request for compensation by a firm disqualified by interest-- would not qualify under any approach, 983 F.2d at 777 ("The scattered cases, none at the court of appeals level, that allow a lawyer to be compensated who, lacking the requisite disinterest, could not have been appointed seem

to us just plain wrong."), but the bankruptcy judge thought that the "equities" of this case justified disregarding this observation. The district judge affirmed, concluding that for two reasons he need not follow Singson. First, the judge stated, Singson "made no mention of Grabill in its discussion of sec.503." Second, Singson involved an untimely request for approval, while MMK sought approval at the outset of the case and bore the effects of congestion in the bankruptcy court's calendar.

Singson disposes of the question at hand. True, the facts of Singson differ from the facts of this case, but the legal issue is the same: may a bankruptcy court compensate an attorney for services despite denying an application under sec.327? That issue was resolved in Singson, which answered "no." Singson concluded that it would vitiate the limitations of sec.327 if a bankruptcy court could deny an application under that section and order the estate to pay for the legal services anyway. Moreover, the structure of sec.503(b) strongly implies that professionals eligible for compensation must receive it under sec.503(b)(2)--which depends on authorization under sec.330 or sec.1103(a) (and thus on approval under sec.327). One might as well erase sec.503(b)(2) from the statute if attorneys may stake their claims under sec.503(b)(1)(A) even when ineligible under sec.sec. 327, 330, and 503(b)(2). Our opinion in Singson did not spell this out at length, but there was no need to do so, for the subject had been covered by another circuit, whose conclusion we endorsed. See In re F/S Airlease II, Inc., 844 F.2d 99, 108-09 (3d Cir. 1988), cited with approval in Singson, 41 F.3d at 320. Appellate opinions need not rehash settled law to enjoy respect by district courts. Brevity in stating a holding is a virtue, and a decision's central conclusion is no less a "holding" for being succinct.

Although the bankruptcy judge believed that applying the Code literally would be inequitable, "[b]ankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law . . . but are limited to what the Bankruptcy Code itself provides." Raleigh v. Illinois Department of Revenue, 120 S. Ct. 1951, 1957 (2000). To the extent equity matters, the claim here is weaker than the one rejected in Singson, for in Singson the obstacle to payment was delay in submitting an application for approval. We held that only "excusable neglect" justifies failure to present an application for approval before performing legal services. We concluded that the law firm in Singson had not established "excusable neglect" and therefore could not receive approval under sec.327. (It was this conclusion that made it necessary to decide

whether the firm could be paid anyway under sec.503(b)(1).) A timely application in Singson likely would have been approved. Here, by contrast, MMK is forbidden to represent the debtor. Using sec.503(b)(1)(A) even to overcome a procedural glitch was disapproved by Singson; that holding logically entails the impropriety of using sec.503(b)(1)(A) to defeat the principal function of sec.327 by requiring the estate to compensate a law firm that labored under a conflict of interest.

The district judge believed that Singson need not be followed because the portion of the opinion dealing with sec.503(b)(1)(A) did not discuss Grabill. This seriously misunderstands the relation between holding (Singson) and dictum (Grabill). A court need not rehash all prior mentions of a topic. What the panel said in Grabill was:

It is a much more orderly system in which the lawyer applies for approval before he starts running up a large bill. Orderliness may not be the highest value and there may be cases in which time is so short that the lawyer must start work before he can file the application--and perhaps some bankruptcy judges, unlike the one in this case, sit on such applications for a long time, which could create great awkwardness. Perhaps in a case in which the lawyer filed his application as early as was practicable, could not defer performing critical legal work for the debtor, and had no reason to believe that his application would be turned down--but it was, much later-- section 330 could be bent to allow compensation. Conceivably section 503 of the Bankruptcy Code, the general administrative-claims section, could be used as a safety valve to relieve the rigidity of section 330 in cases in which it would be highly inequitable to deny a lawyer all compensation for services that had conferred a benefit on the debtor's estate and hence on the unsecured creditors seeking to deny him that compensation. Section 503(b)(1)(A), the only possibly relevant subsection, authorizes payment of the actual, necessary costs of preserving the estate. This subsection might, in the context of a Chapter 11 proceeding such as this, authorize the payment of a claim that arose from a transaction with the debtor in possession (that is, a transaction after bankruptcy has been declared) and was beneficial to the debtor in possession. In re Jartran, Inc., 732 F.2d 584, 586 (7th Cir. 1984); see also In re Hemingway Transport, Inc., 954 F.2d 1, 5-7 (1st Cir. 1992). (We don't suppose it matters whether the transaction is with someone who had rendered similar services to the debtor before bankruptcy.) We need not decide whether this

provision can be invoked by a lawyer who renders postpetition services to the debtor that are not authorized by section 330, or whether the regime created by 330 is exclusive so far as lawyers' services to the debtor is concerned. [The law firm involved in this case] does not cite section 503.

983 F.2d at 777 (emphasis in original). This invited parties to later cases to investigate and brief the question, as the parties to Grabill had not. When Singson arose more than a year later, the parties did investigate and brief it. What they discovered--what the panel in Grabill had not known, given the absence of adversarial presentation--was that the question had been answered in other circuits. It was unnecessary for Singson to discuss Grabill's ruminations. That catalyst had its desired effect, the question was briefed, and Singson was the result. We cover Grabill now only to avoid the risk that courts will ignore this decision, just as the bankruptcy and district judges here decided that they need not follow Singson, but by doing this we do not mean to encourage lengthy explorations of dictum.

Just as Grabill is irrelevant to the authoritative status of the later decision in Singson, so In re Crivello, 134 F.3d 831 (7th Cir. 1998), another case the bankruptcy judge mentioned, is beside the point. A law firm received approval under sec.327 and performed services, but it later came to light that the firm had prior connections with the debtor and related parties, plus prepetition claims against the debtor for legal work. Section 328(c) provides that a court "may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." The legal dispute in Crivello was whether sec.328(c) requires the bankruptcy court to disallow all compensation for legal work done. Emphasizing the word "may" in sec.328(c), we held that a bankruptcy court has discretion to allow some compensation for work by a professional who was actually, but improperly, engaged under sec.327. See 134 F.3d at 836-39. MMK contends that if the law firm in Crivello could receive payment despite a lack of disinterest, it should be paid too; any other approach would create an incentive to lie (or shade the truth) in the initial application for employment. That

is worrisome--though the professional consequences of deceit are not limited to a reduction of fees in a single case, so Crivello is unlikely to lead to fraud in order to get around Singson. But whatever arguments one may make as a matter of first principles, there is a dispositive difference under the statute Congress actually enacted. Crivello dealt with a firm whose employment had been approved under sec.327(a), and whose compensation then was curtailed under sec.328(c). Section 330 expressly permits payment in such cases, and sec.503(b)(2) gives that debt administrative priority. MMK's application under sec.327(a) was denied, so neither sec.330 nor sec.503(b)(2) assists it.

Only one possibility remains to be considered. Should we overrule Singson? MMK does not ask us to take this step; its submission rests on the proposition that Singson should be ignored because it did not "overrule" Grabill. (How can speculation be overruled?) At all events, it would not be appropriate to change our view of the relation among sec.sec. 327, 330, and 503(b). All other appellate decisions on the subject come out the way Singson did. See In re Keren Limited Partnership, 189 F.3d 86, 88 (2d Cir. 1999); In re F/S Airlease II, supra. Bankruptcy appellate panels in two additional circuits have reached the same conclusion. In re Monument Auto Detail, Inc., 226 B.R. 219 (9th Cir. B.A.P. 1998); In re Albrecht, 245 B.R. 666 (10th Cir. B.A.P. 2000). Accord, 6 Collier on Bankruptcy sec.943.03[3][b][i] (15th ed., rev. 2000).

Reversed