EASTERBROOK, Circuit Judge.
 

 When Milwaukee Engraving Co. entered bankruptcy, it was represented by Maier Mcllnay & Kerkman, Ltd. (mmk). Section 327(a) of the Bankruptcy Code, 11 U.S.C. § 327(a), permits a trustee or debtor in possession to “employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons”. Milwaukee Engraving filed an application seeking to use mmk’s services in the bankruptcy proceeding. An accompanying affidavit asserted that mmk was disinterested but revealed that mmk represented Black Hawk Label, Inc., which owed Milwaukee Engraving some $78,000. This would not have been an interest “adverse to the estate” if Black Hawk had been flourishing, but it was not. Black Hawk (under joint ownership with Milwaukee Engraving) was arranging to liquidate, mmk represented Black Hawk in that endeavor and had first dibs
 
 on
 
 the proceeds of any sale, before the balance was distributed to Milwaukee Engraving and Black Hawk’s other creditors. The United States Trustee objected to mmk’s employment, and the bankruptcy court concluded that the law firm’s interest in the proceeds from the sale of Black Hawk’s assets meant that mmk represented an interest adverse to Milwaukee Engraving. See 11 U.S.C. § 101(14)(E). Milwaukee Engraving acquiesced and engaged another law firm.
 

 Section 330(a)(1)(A) of the Code conditions payment of “reasonable compensation for actual, necessary services rendered by ... [an] attorney and by any paraprofessional person employed by any such person” on approval under § 327, which mmk lacked. Nonetheless, mmk asked the bankruptcy judge to approve payment of some $15,000 for the professional services it had rendered to Milwaukee Engraving between the commencement of the case and the approval of its replacement, about 20 days after the judge concluded that mmk was not disinterested. Bankruptcy Judge McGarity granted this application, 230 B.R. 370 (Bankr.E.D.Wis.1998), relying on 11 U.S.C. § 503(b)(1)(A), which permits the court to award as ad ministrative expenses “the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case”. The bankruptcy judge noted that mmk provided legal services for a month between filing and the decision under § 327, observed that these services were beneficial to the estate despite mmk’s interest in Black Hawk, and concluded that it would be inequitable to deny mmk compensation. She recognized, however, that payment for legal services usually depends on §§ 327 and 330, and that § 503(b)(2) grants administrative priority to “compensation and reimbursement awarded under section 330(a) of this title”. By making express provision for employment under § 327, payment under § 330, and priority under § 503(b)(2), the Code logically forecloses the possibility of treating § 503(b)(1)(A) as authority to pay (and give priority to) claims that do not meet its substantive requirements. Statutes directly addressing a subject prevail over silences and implications of other provisions. We so held, for §§ 327, 330, and 503 in particular, in
 
 In re Singson,
 
 41 F.3d 316, 320 (7th Cir.1994), and the bankruptcy judge acknowledged that the language of
 
 Singson
 
 bars an award to mmk.
 

 
 *637
 
 Nonetheless, she stated,
 
 Singson
 
 must be read together with
 
 In re Grabill Corp.,
 
 983 F.2d 773, 777 (7th Cir.1993), which raised the possibility that § 503(b)(1)(A) might provide independent authority to compensate attorneys.
 
 Grabill
 
 added that the sort of claim mmk makes — a request for compensation by a firm disqualified by interest — would not qualify under any approach, 983 F.2d at 777 (“The scattered cases, none at the court of appeals level, that allow a lawyer to be compensated who, lacking the requisite disinterest, could not have been appointed seem to us just plain wrong.”), but the bankruptcy judge thought that the “equities” of this case justified disregarding this observation. The district judge affirmed, concluding that for two reasons he need not follow
 
 Singson.
 
 First, the judge stated,
 
 Singson
 
 “made no mention of
 
 Grabill
 
 in its discussion of § 503.” Second,
 
 Singson
 
 involved an untimely request for approval, while mmk sought approval at the outset of the case and bore the effects of congestion in the bankruptcy court’s calendar.
 

 Singson
 
 disposes of the question at hand. True, the facts of
 
 Singson
 
 differ from the facts of this case, but the legal issue is the same: may a bankruptcy court compensate an attorney for services despite denying an application under § 327? That issue was resolved in
 
 Singson,
 
 which answered “no.”
 
 Singson
 
 concluded that it would vitiate the limitations of § 327 if a bankruptcy court could deny an application under that section and order the estate to pay for the legal services anyway. Moreover, the structure of § 503(b) strongly implies that professionals eligible for compensation must receive it under § 503(b)(2) — which depends on authorization under § 330 or § 1103(a). (and thus on approval under § 327). One might as well erase § 503(b)(2) from the statute if attorneys may stake their claims under § 503(b)(1)(A) even when ineligible under §§ 327, 330, and 503(b)(2). Our opinion in
 
 Singson
 
 did not spell this out at length, but there was no need to do so, for the subject had been covered by another circuit, whose conclusion we endorsed. See
 
 In re F/S Airlease II, Inc. v. Simon,
 
 844 F.2d 99, 108-09 (3d Cir.1988), cited with approval in
 
 Singson,
 
 41 F.3d at 320. Appellate opinions need not rehash settled law to enjoy respect by district courts. Brevity in stating a holding is a virtue, and a decision’s central conclusion is no less a “holding” for being succinct.
 

 Although the bankruptcy judge believed that applying the Code literally would be inequitable, “[bjankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law ... but are limited to what the Bankruptcy Code itself provides.”
 
 Raleigh v. Illinois Department of Revenue,
 
 — U.S. -, -, 120 S.Ct. 1951, 1957, 147 L.Ed.2d 13 (2000). To the extent equity matters, the claim here is weaker than the one rejected in
 
 Singson,
 
 for in
 
 Singson
 
 the obstacle to payment was delay in submitting an application for approval. We held that only “excusable neglect” justifies failure to present an application for approval before performing legal services. We concluded that the law firm in
 
 Singson
 
 had not established “excusable neglect” and therefore could not receive approval under § 327. (It was this conclusion that made it necessary to decide whether the firm could be paid anyway under § 503(b)(1).) A timely application in
 
 Singson
 
 likely would have been approved. Here, by contrast, mmk is forbidden to represent the debtor. Using § 503(b)(1)(A) even to overcome a procedural glitch was disapproved by
 
 Singson;
 
 that holding logically entails the impropriety of using § 503(b)(1)(A) to defeat the principal function of § 327 by requiring the estate to compensate a law firm that labored under a conflict of interest.
 

 The district judge believed that
 
 Singson
 
 need not be followed because the portion of the opinion dealing with § 503(b)(1)(A) did not discuss
 
 Grabill.
 
 This seriously misunderstands the relation between holding (Singson) and dictum
 
 (Grabill).
 
 A
 
 *638
 
 court need not rehash all prior mentions of a topic. What the panel said in
 
 Grabill
 
 was:
 

 It is a much more orderly system in which the lawyer applies for approval before he starts running up a large bill. Orderliness may not be the highest value and there may be eases in which time is so short that the lawyer must start work before he can file the application— and perhaps some bankruptcy judges, unlike the one in this case, sit on such applications for a long time, which could create great awkwardness. Perhaps in a case in which the lawyer filed his application as early as was practicable, could not defer performing critical legal work for the debtor, and had no reason to believe that his application would be turned down — but it was, much later— section 330 could be bent to allow compensation. Conceivably section 503 of the Bankruptcy Code, the general administrative-claims section, could be used as a safety valve to relieve the rigidity of section 330 in cases in which it would be highly inequitable to deny a lawyer all compensation for services that had conferred a benefit on the debtor’s estate and hence on the unsecured creditors seeking to deny him that compensation. Section 503(b)(1)(A), the only possibly relevant subsection, authorizes payment of the actual, necessary costs of preserving the estate. This subsection might, in the context of a Chapter 11 proceeding such as this, authorize the payment of a claim that arose from a transaction with the debtor in possession (that is, a transaction
 
 after
 
 bankruptcy has been declared) and was beneficial to the debtor in possession.
 
 In re Jartran, Inc.,
 
 732 F.2d 584, 586 (7th Cir.1984); see also
 
 In re Hemingway Transport, Inc.,
 
 954 F.2d 1, 5-7 (1st Cir.1992). (We don’t suppose it matters whether the transaction is with someone who had rendered similar services to the debtor before bankruptcy.) We need not decide whether this provision can be invoked by a lawyer who renders postpetition services to the debtor that are not authorized by section 330, or whether the regime created by 330 is exclusive so far as lawyers’ services to the debtor is concerned. [The law firm involved in this case] does not cite section 503.
 

 983 F.2d at 777 (emphasis in original). This invited parties to later cases to investigate and brief the question, as the parties to
 
 Grabill
 
 had not. When
 
 Singson
 
 arose more than a year later, the parties
 
 did
 
 investigate and brief it. What they discovered — what the panel in
 
 Grabill
 
 had not known, given the absence of adversarial presentation — was that the question had been answered in other circuits. It was unnecessary for
 
 Singson
 
 to discuss
 
 Gra-bill’s
 
 ruminations. That catalyst had its desired effect, the question was briefed, and
 
 Singson
 
 was the result. We cover
 
 Grabill
 
 now only to avoid the risk that courts will ignore
 
 this
 
 decision, just as the bankruptcy and district judges here decided that they need not follow
 
 Singson,
 
 but by doing this we do not mean to encourage lengthy explorations of dictum.
 

 Just as
 
 Grabill
 
 is irrelevant to the authoritative status of the later decision in
 
 Singson,
 
 so
 
 In re Crivello,
 
 134 F.3d 831 (7th Cir.1998), another case the bankruptcy judge mentioned, is beside the point. A law firm received approval under § 327 and performed services, but it later came to light that the firm had prior connections with the debtor and related parties, plus prepetition claims against the debtor for legal work. Section 328(c) provides that a court “may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person’s employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.” The legal dispute in
 
 Crivel-lo
 
 was whether § 328(c) requires the bank
 
 *639
 
 ruptcy court to disallow
 
 all
 
 compensation for legal work done. Emphasizing the word “may” in § 328(c), we held that a bankruptcy court has discretion to allow some compensation for work by a professional who was actually, but improperly, engaged under § 327. See 134 F.3d at 836-39. mmk contends that if the law firm in
 
 Crivello
 
 could receive payment despite a lack of disinterest, it should be paid too; any other approach would create an incentive to lie (or shade the truth) in the initial application for employment. That is worrisome — though the professional consequences of deceit are not limited to a reduction of fees in a single case, so
 
 Cri-vello
 
 is unlikely to lead to fraud in order to get around
 
 Singson.
 
 But whatever arguments one may make as a matter of first principles, there is a dispositive difference under the statute Congress actually enacted.
 
 Crivello
 
 dealt with a firm whose employment had been approved under § 327(a), and whose compensation then was curtailed under § 328(c). Section 330 expressly permits payment in such cases, and § 503(b)(2) gives that debt administrative priority, mmk’s application under § 327(a) was denied, so neither § 330 nor § 503(b)(2) assists it.
 

 Only one possibility remains to be considered. Should we overrule ‘Singson? mmk does not ask us to take this step; its submission rests on the proposition that
 
 Singson
 
 should be ignored because it did not “overrule”
 
 Grabill.
 
 (How
 
 can
 
 speculation be overruled?) At all events, it would not be appropriate to change our view of the relation among §§ 327, 330, and 503(b). All other appellate decisions on the subject come out the way
 
 Singson
 
 did. See
 
 In re Keren Limited Partnership,
 
 189 F.3d 86, 88 (2d Cir.1999);
 
 In re F/S Airlease II, supra.
 
 Bankruptcy appellate panels in two additional circuits have reached the same conclusion.
 
 In re Monument Auto Detail, Inc.,
 
 226 B.R. 219 (9th Cir. BAP 1998);
 
 In re Albrecht,
 
 245 B.R. 666 (10th Cir. BAP 2000). Accord, 6
 
 Collier on Bankruptcy
 
 § 943.03[3][b][i] (15th ed., rev. 2000).
 

 Reversed