**IN RE: HENRICKS COMMERCE PARK, LLC, Debtor.**

**CASE NUMBER 02–43841**

United States Bankruptcy Court, N.D. Ohio.

Entered June 15, 2005

Mark Beatrice, Youngstown, OH, Rebecca Kucera Fischer, Porter Wright Morris & Arthur, LLP, Cleveland, OH, for Debtor.

## MEMORANDUM OPINION

HONORABLE KAY WOODS, UNITED STATES BANKRUPTCY COURT

The matter before the Court is the Motion of Gary Gorski ("Gorski"), sole equity

security holder of the Debtor, Henricks Commerce Park, LLC ("Debtor" or "Henricks"), and sole managing member of the Debtor for payment of his counsel's legal fees in the amount of Two Hundred Ninety–Eight Thousand Five Hundred Ninety Dollars ($298,590.00) and reimbursement of counsel's expenses in the amount of Three Thousand Three Hundred Ninety–Two and 62/100 Dollars ($3,392.62) (collectively, the "Attorney's Fees"). Gorski requests payment of the Attorney's Fees as an allowed administrative expense of the Debtor's estate under § 503(b)(3)(D) and (4) of the Bankruptcy Code. The Attorney's Fees were incurred for services rendered by the law firm of Simon & Short, LLC (the "Firm"), primarily through Gary Short, one of the Firm's partners ("Short").

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M). The following constitutes the Court's findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052.

## BACKGROUND

The Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on August 28, 2002 (the "Petition Date"). Gorski was and is the sole equity security holder of the Debtor and its sole managing member. On September 20, 2002, the Debtor filed an Application to retain Porter, Wright, Morris & Arthur LLP ("Porter Wright") as its bankruptcy counsel. By Order dated October 23, 2002, the Court approved the retention of Porter Wright. Porter Wright primarily performed legal services for the Debtor through James Ehrman ("Ehrman").

On October 8, 2002, the Debtor filed an adversary proceeding against Main Steel Polishing, Inc. ("Main Steel"), the Debtor's primary tenant, and two other tenants (the "Main Steel Adversary"), seeking turnover of rent payments that were being withheld. As of November 5, 2003, when the Office of the United States Trustee filed a Motion to Convert or Dismiss Debtor's Chapter 11 case, the Main Steel Adversary was not resolved.

In late October 2003, Gorski contacted Short and the Firm and requested that Short seek to be retained as new bankruptcy counsel for the Debtor. On December 31, 2003, the Firm filed an Emergency Application for approval to be retained as the Debtor's counsel. After a hearing, the Court entered an Order dated January 26, 2004 (the "Denial Order"), in which the Application was denied. The Denial Order held, in relevant part, as follows:

2.  In the instant Application, the Debtor seeks to retain Counsel as its substitute bankruptcy attorney. The Application and supporting affidavit attached to the Application indicate that Counsel was paid a post-petition retainer in the amount of $17,000 by Gary Gorski, the sole member and shareholder of the Debtor. These documents further indicate that Mr. Gorski has agreed to pay an additional $25,000 for Counsel's fees over the next six months. Mr. Gorski is a co-debtor or guarantor upon the Debtor's obligations to Danieli Corporation.

3.  At the hearing, Counsel indicated that his firm filed an individual Chapter 11 bankruptcy petition for Mr. Gorski in Pittsburgh. This petition was subsequently dismissed. Neither the Application nor supporting affidavit disclosed Counsel's prior representation of Mr. Gorski.

4.  As a result of Counsel's prior representation of Mr. Gorski, Mr. Gorski's payment of Counsel's retainer and agreement to pay additional fees of

Counsel, this Court finds that Counsel does not meet the requirements of 11 U.S.C. Section 327(a) as interpreted by applicable Sixth Circuit case law. The possibility of a conflict is apparent even though the Debtor and its sole shareholder may now have a common purpose. Due to the many potential conflicts, the retention of Counsel is prohibited under 11 U.S.C. Section 327(a).

*See* Denial Order at ¶¶ 2–4. (Emphasis added.)

According to Gorski's Affidavit, which was filed as Exhibit 3 to the Motion, "[a]fter the Court denied the Firm's Application, [Gorski] discussed with Short what he could do to move the Debtor's reorganization process forward and Short advised him that Short and the Firm could act as counsel for him in his capacity as equity security holder of the Debtor." *See* Gorski Affidavit at ¶ 3. The Gorski Affidavit goes on to state:

4. Since December 15, 2003, [Gorski] has acted solely with and through the Firm in the Bankruptcy Proceedings, both in his capacity as sole representative of the Debtor and as the sole equity security holder of the Debtor, which includes:

a) formulating, discussing, approving and filing all plans of reorganization he filed, including Gorski and the Debtor's Corrected Third Amended Plan of Reorganization dated December 9, 2004 (the "Plan");

b) discussing, commencing, prosecuting and settling actual and potential litigation, including litigation with Danieli Corporation ("Danieli"), Oxford Development Services a/k/a Oxford Reality, Inc. ("Oxford") and Kleen All of America, Inc. ("Kleen All"); and

c) such actions as is [sic] necessary for a debtor to comply with its obligations under the Bankruptcy Code and those action required of the Debtor in the Bankruptcy Proceeding.

6. . . . [Gorski] has given his consent and approval, as the sole representative of the Debtor, to the Firm, who, in turn, informed Ehrman (defined to include Porter Wright) of that consent and approval.

*See* Gorski Affidavit at ¶¶ 4 and 6. (Emphasis added.)

Gorski's Motion is made on behalf of himself as "sole equity security holder of the Debtor and sole managing member of the Debtor" and is couched as a request for the payment of "his" counsel's legal fees. *See* opening paragraph of the Motion.

The Motion and accompanying Brief in Support of the Motion detail the alleged substantial contribution that the Firm made to the Debtor's reorganization process, as follows:

a) Formulated and filed four plans of reorganization, the last of which, the Corrected Joint Plan of Gary Gorski and the Debtor dated December 9, 2004 ("Plan"), was confirmed by Order of Court dated March 30, 2005, and which, unless general unsecured creditors opted for other treatment, provided 100 percent payment of all allowed claims. All creditors opted for the 40% payment treatment; which result in claims of $833,315, being reduced to $333,326.00, a reduction of $500,069.00 in debt to the estate, excluding Danieli's $966,104.50 general unsecured claim [;]

b) filed objections to three disclosure statements and related plans of reorganization filed by the primary secured creditor in the case, Danieli;

c) concluded negotiations with Main Steel Polishing, Inc. ("Main Steel") and Danieli over a rent withholding dispute with Main Steel, the Debtor's primary tenant at its rental facility, which resulted in a stipulation and agreed order which allowed Main Steel to recoup certain electrical accident damage against rental payments due to the Debtor and provided that Main Steel would pay $639,000.00 to the Debtor for back rent, $300,000.00 of which was designated as to be paid to Danieli;

d) prosecuted an adversary proceeding against Danieli Corporation ("Danieli") at Adversary No. 04–4097 on a claim it held as a result of an assignment from Sky Bank, which resulted in a decision of the Court reducing Danieli's secured claim of $1,520,747.55 to a secured claim of $554,433.00 on the "petition date" which was paid by [sic] post-petition, leaving Danieli with a general unsecured claim of $966,104.55;

e) prosecuted an adversary proceeding against Danieli, on its first mortgage claim, and against Oxford Development Services a/k/a Oxford Reality, Inc. ("Oxford") seeking to assert counterclaims both against Danieli and Oxford for fraudulent concealment and tortious interference with prospective contractual relationship. Prosecution of this adversary proceeding, Adversary No. 04–4096, in conjunction with the Court's decision that Danieli's secured claim acquired from Sky Bank was paid post-petition, lead to a settlement between the Debtor and Danieli ("Danieli Settlement"). The Danieli Settlement provided total benefits to the estate of $1,266,104.55, if the Debtor timely pays its "restated" obligation to Danieli because the Danieli Settlement provides Danieli will release its $966,104.55 "unsecured" claim and the Debtor would receive a discount of $300,000.00 in the amount to be repaid on Danieli's "secured" claim;

f) renegotiated a settlement with Oxford which provided a $30,000.00 payment to the Debtor; and

g) negotiated a settlement with Kleen All of America, Inc. ("Kleen All") who had asserted a mechanic's lien against the Debtor's facility of $571,566.29, which provided that Kleen All would reduce its mechanic's lien to a claim of $74,712.84 which would be paid over time in specified monthly payments and Kleen All would be granted an allowed general unsecured claim of $436,576.55 which was to be paid according to the Plant[.]

*See* Brief in Support of Motion for Payment of Equity Security Holder's Attorney's Fees as an Administrative Expense for Making a "Substantial Contribution" to a Chapter 11 Case ("Brief in Support") at 17–18. (Emphasis removed and citation to docket entries removed.) *See also* Motion at ¶ 7.

### DISCUSSION

Gorski argues that the legal standard under § 503(b)(3)(D) and (4) of the Bankruptcy Code requires only two things: (i) that the entity seeking an administrative claim have made a substantial contribution to the Chapter 11 process and (ii) that the requested fees be reasonable. Gorski contends that his legal counsel's fees meet both of these requirements and, thus, should be allowed and paid as an administrative expense. Section 503(b)(3)(D) and (4) provide as follows:

(b) After notice and a hearing, there shall be allowed administrative ex-

penses, other than claims allowed under section 502(f) of this title, including—

. . .

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

. . .

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

. . .

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

Gorski may be correct in his analysis of the legal standard under § 503(b)(3)(D) and (4), but he misses the threshold question of whether the Court must deny the Firm administrative expense claim status on the basis of its disqualification for retention as Debtor's counsel. Gorski argues that he is entitled to retain any counsel of his choice (see Brief in Support at 21). The Court does not disagree that Gorski, in his capacity as equity security holder, is entitled to retain counsel of his own choosing. The difficulty in this situation arises because of two important facts: (i) Gorski's "chosen" counsel was specifically disqualified from representing the Debtor by the express terms of the Denial Order; and (ii) Gorski admits that he acted as both the

sole representative of the Debtor and the sole equity shareholder in dealing exclusively with the Firm.

In seeking approval of his legal counsel's fees as an administrative expense, Gorski concedes that he utilized the Firm on behalf of the Debtor as well as himself in his individual capacity.

The Firm did hold the confidence and authority of the Debtor's only representative, Gorski. The Firm did take on much of the work which traditionally would be undertaken by Debtor's counsel. The Firm did this because Debtor's counsel [Porter Wright], was unable to act because Gorski, as sole representative of the Debtor, would only give his consent and authority to the Firm. While Debtor's *counsel* role was diminished after February 12, 2004, the Debtor's *role* was not "supplanted", the Debtor was just acting through his own counsel.

*See* Brief in Support at 20. (Emphasis in original.) See also Gorski's Affidavit at ¶ 4 ("[Gorski] has acted solely with and through the Firm in the Bankruptcy Proceedings, both in his capacity as sole representative of the Debtor and as the sole equity security holder of the Debtor ....").

Gorski himself confuses the two hats he wore—one as the sole representative of the Debtor and the other as the sole equity shareholder. As set forth above, Gorski states that the Debtor's role was not supplanted, but the Debtor acted through Gorski's counsel after February 12, 2004 (the date Amy Good, of the Office of the United States Trustee ("UST"), allegedly stated that if Gorski and the Debtor could not act jointly on matters in the bankruptcy proceeding, the UST would be compelled to seek the appointment of a Chapter 11 trustee in the case). The Firm was

prohibited by the Denial Order (which was never appealed and for which the Debtor never sought reconsideration) from representing Debtor in the bankruptcy proceedings.

At the hearing, Gorski's counsel stated that the Denial Order was irrelevant to consideration of the Motion, but this Court believes that the Denial Order dictates the decision that must be made in response to the Motion. In fact, Gorski admits that, despite the Denial Order, the Debtor utilized the services of the Firm and that it is those services for which the Motion seeks an administrative expense.

■ None of the cases cited by Gorski (or the UST in its Objection to the Motion) deal with the precise situation before the Court. The UST relies on *In re HSD Venture*, 178 B.R. 831 (Bankr. S.D. CA 1995), which can be distinguished because it deals with the denial of pre-petition real estate broker's fees as an administrative expense. Despite the ability to distinguish this case, it contains language that is instructive.

> Consequently, the issue becomes whether a pre-petition unsecured creditor, who cannot be employed by the estate, can nevertheless provide post-petition services to an estate and have a claim for those services allowed as an administrative expense. This Court concludes the answer is in the negative. To hold otherwise would eviscerate §§ 327, 101(14) and the policies of control of employment of professionals and the requirement of their disinterestedness, including that they are not creditors of the estate.

*Id.* at 835. (Emphasis added.) A similar question here is whether a law firm that has been disqualified from representing the debtor under § 327 of the Bankruptcy Code can nevertheless perform legal services for the debtor and request payment

for those services as an administrative expense of the estate under § 503(b)(3)(D) and (4). This Court concludes that the answer is in the negative.

The case that the Court found to be most similar to the facts in this case (with one very notable exception) is an unpublished decision from the Tenth Circuit Court of Appeals, *In re Amdura Corp.*, No. 95-1495, 1997 WL 9767, 1997 U.S. App. LEXIS 427, 14 Colo. Bankr. Ct. Rep. 27 (10th Cir. Jan. 10, 1997). In the *Amdura* case, Amdura Corporation was a holding company that owned all of the outstanding stock of Amdura National. After the bankruptcy court disqualified two law firms that had been representing the debtors collectively, Amdura Corporation hired a new law firm. Amdura Corporation, through its new retained law firm, took action that it maintained provided a substantial benefit to the subsidiary estate. Consequently it sought, and obtained, an order allowing a portion of those legal fees as an administrative expense in the subsidiary's bankruptcy case. This decision was upheld on appeal. In the instant case, Gorski is similarly situated to Amdura Corporation. In the Amdura case, however, the distinguishing exceptional fact is that Amdura did not hire one of the previously disqualified counsel. Gorski's position that his legal fees are entitled to administrative expense priority might be tenable if he had not selected the Firm to represent himself—in his dual capacity—after it was disqualified by the Denial Order from representing the Debtor.

In *In re Milwaukee Engraving Co., Inc.*, 219 F.3d 635 (7th Cir. 2000), the Court denied administrative expense status to attorneys who had performed legal services for the debtor between the bankruptcy filing and the denial of retention under § 327 and had also performed legal services after the denial of employment by

working with the debtor's counsel to "transition" matters to new counsel. The attorneys in *Milwaukee Engraving* sought their fees pursuant to an application under § 330 rather than under § 503(b)(3)(D) and (4), but the analysis is much the same. The court held:

> ... [M]ay a bankruptcy court compensate an attorney for services despite denying an application under § 327? That issue was resolved in *Singson* [*In re Singson*, 41 F.3d 316 (7th Cir. 1994)], which answered "no." *Singson* concluded that <u>it would vitiate the limitations of § 327 if a bankruptcy court could deny an application under that section and order the estate to pay for the legal services anyway</u>. Moreover, the structure of § 503(b) strongly implies that professionals eligible for compensation must receive it under § 503(b)(2)— which depends on authorization under § 330 or § 1103(a) (and thus on approval under § 327). One might as well erase § 503(b)(2) from the statute if attorneys may stake their claims under § 503(b)(1)(A) even when ineligible under §§ 327, 330, and 503(b)(2).

*Id.* at 637. (Emphasis added.) Here, as in *Milwaukee Engraving*, the Firm sought and was denied authority to represent the Debtor. Despite protestations of counsel that the Firm only represented Gorski in his capacity as equity security holder, the Motion, Brief in Support and the Gorski Affidavit all demonstrate that Gorski utilized the Firm on behalf of himself in his role as the representative of the Debtor. Nowhere is this more clearly stated than on page 20 of the Brief in Support, quoted above ("... the Debtor's role was not 'sup-

planted', the Debtor was just acting through his [Gorski's] own counsel.").

██ Gorski argues that it would be inequitable to deny administrative expense status to the Firm's Attorney Fees because the Debtor had no confidence in Porter Wright and the Debtor would not have been able to obtain any attorneys other than the Firm to represent it.[1] Unfortunately, there is no factual support for this argument. The Debtor never sought Court authority to retain any other counsel nor did Gorski or the Debtor move the Court for reconsideration of the Denial Order on these alleged equitable grounds. There is no evidence that the Debtor sought but was unable to obtain counsel other than the Firm to substitute for Porter Wright. As a consequence, the Court must reject this argument, even if there may be equity, as Gorski argues, in favor of granting the Attorney Fees administrative expense status. "Although the bankruptcy judge believed that applying the Code literally would be inequitable, bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law ... but are limited to what the Bankruptcy Code itself provides." *Id.* at 637 (quoting *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 1957, 147 L.Ed.2d 13 (2000)).

## CONCLUSION

Henricks was prohibited by the Court's Denial Order from employing the Firm. In direct contravention of the Denial Order, Gorski "chose" to employ the Firm to act not only for himself as the sole security holder, but also as the sole representative of the Debtor. Even if the Motion, Brief in

---

1. If this is true, Debtor should have moved the Court to reconsider the Denial Order, which it did not do. To the extent Debtor has an issue with any fees that may be subse-quently requested by Porter Wright, Debtor should raise the issue at that time so the Court can address such concerns.

Support and the Gorski Affidavit were not as explicit as they are about the dual capacity retention of the Firm, the actions that the Firm details as a benefit to the estate belie that they were taken on behalf of Gorski as the shareholder only. In negotiating with Danieli, Oxford and Kleen All, those parties all must have believed that Gorski and the Firm had the authority to bind the Debtor. Absent such authority, those parties would never have reached settlement with Gorski. (It is absurd to assume that the Firm, in negotiating the disputes, represented to those adverse parties that Gorski, the sole shareholder, would recommend the proposed settlements to himself, as the sole Debtor representative, and urge the Debtor to adopt the proposed settlements.) Accordingly, this Court finds that the Firm's work, as detailed in the Motion and Brief in Support, which allegedly constituted a substantial contribution to the benefit of the Debtor's estate, was actually done on behalf of the Debtor itself as well as Gorski as the sole equity security holder. The Court finds that Gorski's two roles were so intertwined that it is impossible to separate fees that related only to representation of Gorski as sole shareholder.

Because the Firm was disqualified from acting as Debtor's counsel under § 327 by the Denial Order, this Court holds that the Firm's Attorney's Fees are not entitled to be administrative expenses of Debtor's estate. This Court agrees with the reasoning in *Milwaukee Engraving* that it may not compensate attorneys who have been disqualified under § 327 by allowing those fees administrative expense status under § 503(b)(3)(D) and (4).

An appropriate order shall enter.

### ORDER

For the reasons set forth in this Court's Memorandum Opinion entered this date, the Motion for Payment of Equity Security Holder's Attorney's Fees as an Administrative Expense for Making a "Substantial Contribution" to a Chapter 11 Case is denied. This Court may not compensate attorneys who have been disqualified under § 327 by allowing those fees administrative expense status under § 503(b)(3)(D) and (4).

**IT IS SO ORDERED.**