**In re Louis TIRADO, Debtor.**

**No. 03–36040–SVK.**

United States Bankruptcy Court, E.D. Wisconsin.

Aug. 17, 2005.

Steven R. McDonald, Michael J. Watton, Milwaukee, WI, for Debtor.

David W. Asbach, Mary B. Grossman, Louis R. Jones, Milwaukee, WI, for trustee.

## MEMORANDUM DECISION

SUSAN V. KELLEY, Bankruptcy Judge.

Louis Tirado (the "Debtor") filed a chapter 13 bankruptcy petition in this court on October 27, 2003. His assets included his residence located in the City of Milwaukee (the "Property"). In his schedules, the Debtor valued the Property at $62,400, subject to a mortgage lien of approximately $60,500. Apparently the Debtor was current on his mortgage payments at the time he filed chapter 13, as no pre-petition arrearage was scheduled to be paid through the plan. The plan proposed that the Debtor would pay $187 weekly for 36 months, which would pay the Debtor's attorneys fees, a car loan and two other secured creditors in full, and provide a dividend of not less than 53% to the unsecured creditors. The plan also provided that the Debtor would continue to make

his regular monthly mortgage payments directly to the mortgagee.

The plan was confirmed on June 23, 2004. Sometime in early 2005, the Debtor began having difficulty making his monthly mortgage payments. According to testimony that was later presented to the court, Steven M. Jenkins ("Jenkins") assisted the Debtor and staved off foreclosure proceedings. Jenkins located a tenant for the Property, Thyron Lyles ("Lyles"), and the rent payments were used to make the Debtor's mortgage payments. With assistance from Jenkins, Lyles sought and obtained financing to purchase the Property, at a price that would be sufficient to pay the mortgage, taxes, and other obligations, and return some equity to the Debtor and his co-owner.

On May 23, 2005, Lyles executed an offer to purchase the property for $80,000. In an attached Addendum signed by the Debtor, Lyles and Jenkins, at the closing of the sale, the Debtor agreed to pay $4,500 of Lyles' closing costs and $6,000 to Jenkins as an "administration fee." The Debtor sought approval from the chapter 13 trustee for the sale of the Property, and the Trustee approved the sale, but not the administration fee for Jenkins. The Trustee advised that only the court could approve Jenkins' compensation.

On June 21, 2005, Jenkins filed a handwritten request for approval of his fee, and on July 1, 2005, Jenkins filed another typewritten request for payment of his administration fee, accompanied by the Residential Offer to Purchase and the Addendum.

The court set the matter for hearing July 19, 2005.

A week before the hearing, the Trustee filed an Objection to Jenkins' request, listing four reasons that he should not be paid: 1) there was no listing contract attached to the application; 2) there was no evidence that Jenkins is a licensed real estate broker; 3) there was no evidence that Jenkins is an "uninterested party" [1]; and 4) the compensation of $6,000 was excessive since 6% of the sale price of $80,000 would be $4,800.

At the hearing, Jenkins, the Debtor's bankruptcy attorney, a previously undisclosed co-owner of the Property, and the attorney for the Chapter 13 Trustee appeared. Jenkins testified that he had worked hard to secure Lyles as a tenant, which enabled the Debtor's mortgage payments to be made while Lyles obtained financing to purchase the Property. The Debtor's attorney admitted that Jenkins was instrumental in facilitating the sale of the Property, but argued that the fee should be reduced to $4,800, commensurate with a standard 6% real estate broker's commission. The Trustee argued that Jenkins could not be paid since his employment was not approved in advance by the court, and there was no evidence that Jenkins is a licensed real estate broker. The co-owner indicated no objection to Jenkins' fee being paid in full from the sale.

None of those present disputed that Jenkins' labors saved the Debtor's property from foreclosure. As a result of his services, the mortgage and real estate taxes will be paid in full, and equity is avail-

---

**1.** Presumably, the Chapter 13 Trustee is referring to the requirement of Bankruptcy Code § 327 that only those professional persons who are "disinterested persons" may be employed by the trustee. 11 U.S.C. § 327(a). A disinterested person is defined in § 101(14) of the Bankruptcy Code, and for our purposes, is one who does not have an interest materially adverse to the interest of the estate or creditors, by reason of any connection with the debtor.

able for the Debtor and his unsecured creditors. It is apparent that Jenkins' efforts enhanced and benefited the bankruptcy estate. After considering the arguments of counsel and the equities of the situation, the court proposed a compromise: Jenkins would be allowed an administrative claim in the bankruptcy case in the amount of $4,000. Jenkins initially requested that the fee be increased to $4,800 as originally proposed by the Trustee, but the court denied the request, and asked him to accept $4,000. He agreed to do so, and the court's notes indicate that both counsel for the Debtor and counsel for the Trustee affirmatively stated that they had no objection to the allowance of Jenkins' administrative claim in the amount of $4,000. The court entered the Order on Application for Compensation on July 19, 2005.

Ten days later, the Trustee filed a Motion asking the court to vacate the July 19 Order, and deny Jenkins' request for compensation. The Trustee argues that the administrative claim was inappropriate under § 503(b)(1)(A) of the Bankruptcy Code because Jenkins is a professional who can only be compensated pursuant to the procedures set forth in Bankruptcy Code §§ 327 and 330. According to the Trustee, if Jenkins is not a qualified professional under §§ 327 and 330, Jenkins cannot be compensated at all.

*The Trustee's Motion for Reconsideration*

Bankruptcy Rule 9023 provides that "Rule 59 F.R. Civ. P. applies in cases under the Code, except as provided in Rule 3008 [relating to orders allowing or disallowing claims against the estate]." Similarly, "all substantive motions served within 10 days of the entry of a judgment will be treated as based on [Federal Rule of Civil Procedure] 59." *Charles v. Daley,* 799 F.2d 343, 347 (7th Cir.1986). F.R. Civ.

P. Rule 59(e) specifically provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." "Rule 59(e) motions are used to request 'reconsideration of matters properly encompassed in a decision on the merits.'" *Lentomyynti Oy v. Medivac, Inc.,* 997 F.2d 364, 366 (7th Cir.1993) (quoting *White v. New Hampshire Dept. of Employment Sec.,* 455 U.S. 445, 451, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982)).

■ "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. *Such motions cannot in any case be employed as a vehicle to introduce new evidence.... Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.*" *Publishers Res., Inc. v. Walker–Davis Publ'ns, Inc.,* 762 F.2d 557, 561 (7th Cir.1985) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.,* 561 F.Supp. 656, 665–666 (N.D.Ill.1982), *aff'd* 736 F.2d 388 (7th Cir.1984)) (emphasis in original). The purpose of a Rule 59(e) motion "is not to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.),* 125 B.R. 963, 977 (Bankr.N.D.Ill. 1990). "A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *Id.*

In this case, the sole procedural basis in the Trustee's Motion is that the court's Order allowing an administrative claim for Jenkins is "improper." Nowhere in the Motion does the Trustee allege anything other than the impropriety of the $4,000 administrative expense award. The Trus-

tee does not assert that the court made any "manifest errors of law or fact" [2] nor that the Trustee is "present[ing] newly discovered evidence." *Publishers Res., Inc.,* 762 F.2d at 561.

The Motion is troubling because the Trustee's attorney stated on the record that she had no objection to the allowance of the administrative claim in the reduced amount. Thus, the Trustee's Motion appears to reflect a change of heart, or worse, that the Trustee's attorney lacked authority to speak on behalf of the Trustee at a hearing before the court. However, viewing the Motion in the light that the Trustee believes that the court made a manifest error of law—even though the Trustee's Motion does not use those words—and the Trustee would not have agreed to the court's suggested compromise if it were grounded on a manifest error of law, the merits of the Motion will be addressed.

### *Application of 11 U.S.C. § 327*

■ Section 327 of the Bankruptcy Code provides, in relevant part:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more ... professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(b) If the trustee is authorized to operate the business of the debtor under [Chapter 7, Chapter 12, or Chapter 11],

and if the debtor has regularly employed ... professionals on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor . . . .

(d) The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor . . . .

(f) The trustee may not employ a person that has served as an examiner in the case.

Bankruptcy Code § 330 is a companion to § 327, and grants the court the power to award compensation to the trustee, examiner or "professional person employed under section 327 or 1103." Section 503(b)(1) of the Bankruptcy Code, relied upon here to approve compensation for Jenkins, provides that the court may allow administrative expenses, including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case."

In her Motion, the Trustee relies almost exclusively on *In re Milwaukee Engraving Co.,* for the proposition that a professional

---

**2.** A "manifest error" is "[a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Black's Law Dictionary* 582 (8th ed.2004). "Improper," on the other hand, means "[i]ncorrect; unsuitable or irregular" and "[f]raudulent or

otherwise wrongful." *Id.* at 773. The Court must assume that the Trustee seeks Reconsideration on the ground that the Court made a manifest error of law, since nowhere in the Motion is there any discussion of an interpretation of facts or newly discovered evidence.

who is not employed under § 327 cannot be compensated with an administrative expense claim under § 503. 219 F.3d 635 (7th Cir.2000). *Milwaukee Engraving* is a chapter 11 case in which the court denied the debtor in possession's ("DIP") application to employ a law firm because the law firm was also representing the DIP's owner. *Milwaukee Engraving Co.*, 219 F.3d at 636. Since the law firm had already done a substantial amount of work for the DIP prior to being disqualified, the firm sought compensation in the form of an administrative expense claim under § 503(b). *Id.* The Seventh Circuit disallowed the law firm's § 503(b) claim, reversing both the bankruptcy court and the district court in the process. *Id.*

*Milwaukee Engraving* helped clarify the rulings of three earlier Seventh Circuit decisions involving similar compensation issues. In *In re Singson*, the chapter 7 trustee's attorneys exceeded the services approved in their § 327 application. 41 F.3d 316 (7th Cir.1994). When the trustee sought retroactive approval for the additional services, the bankruptcy court applied an "excusable neglect" standard, and denied the compensation. *Singson*, 41 F.3d at 320. The court of appeals affirmed, and expressly disapproved of using § 503(b)(1) to compensate a firm that had failed to win approval under § 327. *Id.* However, in *In re Grabill Corp.*, the court of appeals had left open the § 503(b) door in a chapter 11 case. 983 F.2d 773 (7th Cir.1993). In *Grabill*, after the conversion of an involuntary case to chapter 11, the DIP's law firm had a conflict of interest and could not be employed under § 327.[3] The firm assisted substitute counsel to get up to speed, and sought compensation for its services. The court of appeals held

that § 330 does not permit compensation to a professional who has been denied employment under § 327. *Grabill*, 983 F.2d at 777. Addressing the perceived injustice of denying compensation to a professional who renders services before discovering a conflict of interest, the court said:

> Conceivably section 503 of the Bankruptcy Code, the general administrative-claims section, could be used as a safety valve to relieve the rigidity of section 330 in cases in which it would be highly inequitable to deny a lawyer all compensation for services that had conferred a benefit on the debtor's estate and hence on the unsecured creditors seeking to deny him that compensation. Section 503(b)(1)(A), the only possibly relevant subsection, authorizes payment of the actual, necessary costs of preserving the estate. This subsection might, in the context of a Chapter 11 proceeding such as this, authorize the payment of a claim that arose from a transaction with the debtor in possession (that is, a transaction *after* bankruptcy has been declared) and was beneficial to the debtor in possession.

*Id.* (emphasis in original) (citations omitted). The attorneys in *Grabill*, however, never raised § 503(b) in support of their request for compensation. *Id.* at 778.

*Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, involved whether the bankruptcy court had discretion to award compensation to a chapter 11 professional who had been employed under § 327, but the employment order was later reconsidered and vacated. 134 F.3d 831 (7th Cir. 1998). *Crivello* did not address whether § 503(b) could serve as a backup to § 330, but did appear to limit *Grabill* to "limited

---

3. The attorneys for an involuntary debtor do not have to qualify as "disinterested persons," but this standard must be met for to be employed as attorneys for a trustee or DIP. 11 U.S.C. § 327(a).

instances," in which courts have awarded compensation to "professionals who would have been approved as debtor's counsel under § 327(a) but who neglected to file an application because denying all compensation would be an excessive penalty for harmless neglect." *Crivello*, 134 F.3d at 836 n. 3.

In light of the Seventh Circuit's interpretation of *Singson, Grabill*, and *Crivello*, the holding in *Milwaukee Engraving* was succinctly expressed in three short sentences:

> *Singson* disposes of the question at hand. True, the facts of *Singson* differ from the facts of this case, but the legal issue is the same: may a bankruptcy court compensate an attorney for services despite denying an application under § 327? That issue was resolved in *Singson,* which answered "no."

*Milwaukee Engraving,* 219 F.3d at 637.

The chapter 13 trustee's reliance on this line of cases is misplaced. *Milwaukee Engraving, Singson, Grabill,* and *Crivello* are not chapter 13 cases, and § 327 does not apply to the employment of attorneys or other professionals by a chapter 13 debtor. Section 327 applies to trustees, and, pursuant to § 1107 of the Bankruptcy Code, when § 327 refers to the trustee, the reference includes the debtor in possession. *See Milwaukee Engraving,* 219 F.3d at 636 (noting that section 327(a) "permits a trustee or debtor in possession to 'employ one or more attorneys ....' ").

Each subsection of § 327 either focuses on the trustee or excludes chapter 13. *See* 11 U.S.C. §§ 327(a) ("the trustee ... may employ ..."); 327(b) ("the trustee may retain or replace ..."); 327(c) ("In a case under chapter 7, 12, or 11 of this title ..."); 327(d) ("the court may authorize the trustee to act as attorney or accountant"); 327(e) ("The trustee ... may employ ..."); *and* 327(f) ("The trustee may

not employ ..."). Congress, through the use of plain and unambiguous language, has limited the scope of § 327 to trustees. Although chapter 11 debtors in possession have also been included under § 327 via § 1107, and chapter 12 debtors must comply with § 327 pursuant to § 1203, there is no corresponding section of chapter 13 making § 327 applicable to chapter 13 debtors.

Therefore, § 327 of the Bankruptcy Code simply does not apply to chapter 13 debtors who seek to employ professionals. The requirements of § 327 would be triggered by a chapter 13 trustee's application to employ a professional, but in this case, Jenkins' services were rendered to the Debtor, not the Trustee. For, unlike chapter 11 and 12 in which the debtor in possession has the same rights and duties when selling property and employing professionals as a trustee, "the [chapter 13] debtor shall have, *exclusive of the trustee,* the rights and powers of a trustee [to use, sell, or lease property]." 11 U.S.C. § 1303 (emphasis supplied).

Moreover, under § 1327(b), "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Accordingly, after confirmation, unless the plan or confirmation order says differently, the Debtor could sell the Property without seeking prior approval of the court or the Trustee. Here, the Plan states that "title to the Debtor's property shall revest in debtor on conversion, dismissal, or discharge," (none of which have occurred yet), and the Order Confirming Plan provides:

> during the pendency of the plan confirmed herein, all property of the estate ... shall, unless provided otherwise in the Plan, remain under the exclusive jurisdiction of the Court and the debtor shall not, without the appropriate consent of the Chapter 13 Trustee, or the

Court, sell or otherwise dispose of or transfer such property other than in accordance with the terms of the plan confirmed herein.

Since the Order confirming plan required the Debtor to obtain "appropriate consent" of the Trustee or the court to sell the Property, the Debtor sought approval of the sale from the Trustee, and it is undisputed that the Trustee gave her consent in early June 2005.

However, the Debtor did not seek prior approval of his agreement to pay Jenkins $6,000, which violated another provision of the Confirmation Order. The Order Confirming Plan states that "the debtor shall not, without obtaining prior written consent and approval of the Trustee or an Order of the Court, become liable for money borrowed or property of any kind purchased on credit." At the hearing on Jenkins' application, the court indicated a major concern with the parties' failure to seek approval in advance for Jenkins' services. Weighing that concern against the undeniably positive results obtained in this case led to the court's suggestion that a reduced fee be awarded as an administrative expense claim. The court admonished Jenkins to follow appropriate procedures before assisting other chapter 13 debtors in the future.

### Lack of a License

■ The Trustee also argues that Jenkins cannot be employed under § 327, and thus not compensated under § 503(b), because he is not a licensed real estate broker. Since Jenkins is not required to be employed as a professional under § 327, this point is irrelevant. Wisconsin law prohibits a person from acting as a real estate broker without a license. *See* Wis. Stats. § 452.03 (2004). But the definition of "broker" does not include "Receivers, trustees . . . or other persons appointed by or acting under the judgment or order of any court." Wis. Stats. § 452.01(3)(a).

Accordingly, if this court appointed Jenkins to assist with the sale of the Debtor's Property, he would not be required to hold a real estate broker's license.

As provided in the Order Confirming Plan, the court retained jurisdiction to approve post-confirmation sales of property and debts incurred by the Debtor. The sale and the corresponding debt to Jenkins appeared to the court to be in the best interest of the estate and its creditors, given that the mortgage, taxes, and other claims will be paid as a result of Jenkins' assistance.

Also, the Debtor was represented by two lawyers in this transaction—the real estate attorney who drafted the Addendum and the bankruptcy attorney who appeared at the hearing. Neither of them raised concerns with Jenkins' lack of a real estate broker's license, although the bankruptcy attorney thought that the "administration fee" should be reduced from $6,000 to $4,800, in line with what a licensed broker would have charged, had one been interested in listing the Debtor's Property. The co-owner of the Property also consented to the payment of the administration fee, although she was aware that Jenkins apparently lacks a real estate broker's license.

Given that the only objection to Jenkins' lack of a real estate license was raised by the Trustee, the court's authority to approve post-confirmation sales and indebtedness incurred by the Debtor, and the exemption from the licensing requirements for receivers, trustees and other persons appointed by a court, the court's award of a reduced fee of $4,000 to Jenkins did not constitute a manifest error of law because Jenkins did not have a real estate broker's license.

### Summary and Conclusion

In summary, *Milwaukee Engraving* and the other cases cited by the Trustee are

inapposite to this chapter 13 case, because § 327 of the Bankruptcy Code does not apply to professionals employed by chapter 13 debtors. The chapter 13 debtor has the right, exclusive of the trustee, to sell property of the estate, although the Confirmation Order in this case allowed the Trustee to approve sales. Under the express language of the Order confirming the Plan, the Debtor should have sought advance approval from the Trustee or the court before agreeing to pay Jenkins for his services. Neither the failure of the parties to seek advance approval nor Jenkins' alleged lack of a broker's license is sufficient to deny all compensation to Jenkins for his efforts in assisting with the rental and sale of the Debtor's Property. Finding that the sale was in the best interest of the creditors, the Debtor, and the co-owner, and believing that the sale would not have occurred but for Jenkins' efforts, the court awarded an administrative claim of $4,000 to Steven Jenkins. The Trustee has failed to show that the court committed a manifest error of law, and a separate order will be issued denying the Trustee's Motion for Reconsideration.